John M. Howell; ISB #6234
POWERS FARLEY, PC
702 West Idaho Street, Suite 700
Boise, Idaho 83702
Telephone: (208) 577-5100
Email: jmh@powersfarley.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| JASON KNAPP,<br><br>    Plaintiff,<br><br>vs.<br><br>KORE POWER, INC., a Nevada corporation,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff Jason Knapp, by and through his counsel of record, Powers Farley, PC, and for causes of action against Defendant KORE Power, Inc., alleges and avers as follows:

## PARTIES

1. Plaintiff Jason Knapp ("Knapp") is a resident of Fairfax County, Virginia.

2. Defendant KORE Power, Inc. ("KORE"), is a corporation organized in the State of Nevada, who does business in Idaho. KORE's principal place of business is located at Suite 200, 1875 N. Lakewood Dr., Coeur d'Alene, Idaho.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because Knapp and KORE are residents of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because KORE resides in the District of Idaho and a substantial part of the events or omissions giving rise to these claims occurred in this District.

## NATURE OF THE CLAIMS

5. This lawsuit stems from Knapp's employment with KORE, KORE's promises made and obligations owed to Knapp, and the breach of those promises and obligations. KORE failed to honor its agreements with Knapp by failing to compensate Knapp for wages that were due and owing by KORE. Moreover, KORE concocted grounds to justify its termination of Knapp and did so to avoid paying Knapp what was justly due and owing him.

## GENERAL ALLEGATIONS AND FACTS

6. Knapp is a former U.S. Navy pilot and a retired Naval Officer. He served in the Navy for more than twenty years, spending most of his time flying the F/A-18 Hornet. Toward the end of his career with the Navy, he served as a Department of Defense Fellow, the Deputy Director for U.S. European Command, and finally as the Executive Officer of Plans and Operations for NATO Headquarters.

7. Following his retirement with the Navy, Knapp led the government relations section of a start-up company securing grants with the Department of Energy.

8. Thereafter, effective March 25, 2020, Knapp accepted employment with KORE for the position of Vice President of Government Relations and Federal Business Development.

9. Knapp's compensation package included a salary of $150,000, stock options, annual bonus, and various benefits such as paid time off.

10. KORE holds itself out as the leading U.S. based developer of battery cell technology for the energy storage and electric transportation industries.

COMPLAINT AND DEMAND FOR JURY TRIAL – 2

11. A key component of KORE's strategic vision is to open a large-scale battery cell manufacturing facility in the United States.

12. In the Fall of 2020, Knapp was given the task of leading KORE's North American Sales Team. In addition, KORE management assigned Knapp the job of pursuing state incentives, specifically including grants and tax credits, which had previously been assigned to the Senior Vice President of Operations. However, that individual was being pushed out by KORE management and was ultimately terminated in early 2021.

13. With the additional duties, Knapp's workload increased substantially. However, other than a cost of living adjustment, Knapp received no change in his salary. Instead, Knapp and KORE agreed on a commission schedule to compensate him for his additional workload.

14. The commission schedule was set forth in a spreadsheet entitled KNAPP 2021 Goals ("Goals 2021"). KORE's CEO, Lindsay Gorrill, and CFO, Paul Coombs, requested Knapp to create the spreadsheet and set forth Knapp's goals for 2021 and his bonus and commission schedules. The Goals 2021 spreadsheet provides the elements necessary for Knapp to earn his annual bonus and also set forth the opportunities to earn commissions. The Goals 2021 spreadsheet was approved by KORE on December 21, 2020.

15. Of particular import was KORE's promise to provide Knapp a commission for certain state incentives awarded to KORE. KORE agreed to provide Knapp a two percent (2%) commission for the value of the state incentive, to be payable half as cash and half in shares of KORE.

16. In 2020, KORE was in the process of selecting a site for its manufacturing facility. Knapp's added role pertaining to the pursuit of state incentives included undertaking efforts to secure the most lucrative incentives as possible for KORE's benefit.

17. As of December 2020, KORE had narrowed the site selection for its manufacturing facility to Florida, Texas or Arizona. Within these three states, KORE targeted five specific state incentives, one of which was named "Arizona Closing Funds." The Arizona Closing Funds incentive was in the form of a refundable income tax credit for qualifying capital investment made at a manufacturing facility.

18. Knapp played a critical role in KORE's efforts to secure incentives from the State of Arizona. Ultimately, in a letter dated June 18, 2021, the Arizona Commerce Authority issued KORE an Incentive Award Letter whereby the State of Arizona offered KORE a refundable tax credit of $63 million through the Qualified Facilities Tax Credit Program as well as a $2 million award through the Arizona Competes Fund, for a total award of $65 million.

19. Based upon the incentives offered by the State of Arizona, KORE selected Arizona for its manufacturing facility.

20. The award from the State of Arizona triggered the 2% commission that KORE agreed to provide Knapp, payable half in cash and half in shares of KORE. To that end, upon the issuance of the award from the State of Arizona as set forth in the June 18, 2021 letter, Knapp earned a commission consisting of $650,000 worth of shares in KORE and a cash payment of $650,000.

21. Knapp attempted to raise the issue of his commission with KORE's CEO, Mr. Gorrill, and CFO, Mr. Coombs. In response, Mr. Gorrill, for all intents and purposes, ceased all communication with Knapp, and turned the issue over to Mr. Coombs. Mr. Coombs informed Knapp that KORE did not owe him any commission. In addition, despite being an exemplary employee and just having helped secure $65 million in incentives for KORE, Mr. Coombs informed Knapp that he would be subjected to a "complete performance review."

22. After pressing Mr. Gorrill and Mr. Coombs on his commission, KORE management, specifically Mr. Coombs, looked for reasons to terminate Knapp. KORE believed that if Knapp were terminated, it would not be obligated to compensate him for his work in securing the Arizona incentives.

23. To this end, on July 9, 2021, KORE's Director of Human Resources, Andy Oranen, sent an email to Knapp entitled "written warning" wherein Mr. Oranen accused Knapp of spreading "false accusations" and contained a threat of termination with cause if Knapp continued his behavior.

24. Knapp had engaged in no improper behavior nor had he spread "false accusations." As explained by Mr. Oranen, the "false accusations" stemmed from Knapp's assertion that KORE owed him a commission.

25. In addition to receiving the "warning" from Mr. Oranen, Mr. Coombs continued his performance review of Knapp and demanded that Knapp provide him with a summary of his tasks over the next thirty days. Knapp did so and offered to meet with Mr. Coombs to discuss his job performance but received no response from Mr. Coombs.

26. On July 16, 2021, Knapp again requested KORE to honor its agreement with him and pay him the commission he earned from the Arizona project.

27. On July 20, 2021, Mr. Oranen sent Knapp an email terminating his employment with KORE. The justification for the termination was, *inter alia*, that Knapp repeatedly requested KORE to pay the commission he earned. Mr. Oranen accused Knapp of engaging in "disrespectful and self-interested conduct," and cited to a telephone call with Mr. Coombs on July 9, 2021, an email from Knapp to Mr. Coombs on July 12, 2021, and an accusation that Knapp pushed KORE to select Arizona out of greed.

28. Only after Knapp asserted that he was entitled to a commission did KORE take any issue with Knapp's performance.

29. KORE's actions are a thinly veiled effort to try and justify Knapp's termination and avoid paying Knapp what was promised to him.

30. KORE's termination of Knapp's employment was improper.

31. To date, KORE has failed to pay Knapp what is justly due and owing to him including: (1) commissions for the Arizona Closing Funds in the amount of $1,300,000, payable by $650,000 worth of shares in KORE and $650,000 cash; (2) severance payment of $51,750.00; and (3) the value of accrued paid time off totaling $8,158.15.

32. In addition, Knapp had 10,000 stock options in KORE that vested on March 25, 2021. Upon Knapp's termination, KORE wrongfully cancelled the options.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – BREACH OF EMPLOYMENT CONTRACT AND/OR UNPAID WAGES

33. Knapp incorporates all previous allegations as though fully set forth herein.

34. KORE, through CEO Lindsay Gorrill and CFO Paul Coombs, requested Knapp to create a spreadsheet and to set forth Knapp's goals for 2021 including his bonus and commission schedules.

35. The Goals 2021 spreadsheet provided the necessary prerequisites for Knapp to earn his annual bonus and commissions.

36. KORE signed and approved Knapp's Goals 2021 spreadsheet on December 21, 2020.

37. Knapp's Goals 2021 spreadsheet is a valid agreement. After KORE requested the goals sheet, Knapp constructed it and offered it to KORE. Knapp and KORE exchanged various communications about the Goals 2021 spreadsheet. KORE clearly accepted the Goals 2021

spreadsheet and signed the document. The Goals 2021 spreadsheet was in consideration for Knapp's additional responsibilities of pursuing state incentives, specifically including grants and tax credits, which had previously been assigned to the Senior Vice President of Operations.

38. The Goals 2021 spreadsheet provided Knapp a 2% commission for certain state incentives to be payable half as cash and half in shares of KORE.

39. Knapp played a critical role to secure incentives from the State of Arizona for KORE.

40. Knapp's services related to finding and obtaining incentives for KORE were in addition to his regular duties

41. KORE agreed to compensate Knapp over and above his standard compensation as set forth in the Goals 2021 spreadsheet.

42. On June 18, 2021, the Arizona Commerce Authority issued KORE an Incentive Award Letter whereby the State of Arizona offered KORE a refundable tax credit of $63 million through the Qualified Facilities Tax Credit Program as well as a $2 million award through the Arizona Competes Fund, for a total award of $65 million.

43. KORE selected the State of Arizona for its manufacturing facility based upon the incentives offered.

44. The award from the State of Arizona triggered the 2% commission that KORE agreed to provide Knapp, payable half in cash and half in shares of KORE.

45. On June 18, 2021, Knapp earned a commission consisting of $650,000 worth of shares in KORE and a cash payment of $650,000.

46. KORE terminated Knapp and refused to pay him his commission.

47.    KORE breached the Goals 2021 agreement between Knapp and KORE by failing to pay Knapp his commission.

48.    Earned commissions are considered wages under the Idaho Wage Claim Act, I.C. § 45-601, *et seq.*

49.    Knapp has been damaged as a result of KORE's actions and conduct, and therefore is entitled to damages, including damages in the amount of three (3) times the unpaid commissions that are due and owing pursuant to I.C. § 45-615.

50.    Knapp has been required to employ attorneys to commence and prosecute this action and has agreed to pay his attorneys their reasonable fees for services rendered.  Recovery of attorney fees and costs is specifically allowed pursuant to Idaho Code §§ 45-615 and 45-617. Additionally, Knapp is entitled to prejudgment interest under I.C. § 28-22-104.

**SECOND CAUSE OF ACTION – BREACH OF EMPLOYMENT CONTRACT AND/OR UNPAID WAGES**

51.    Plaintiff incorporates all previous allegations as though fully set forth herein.

52.    Knapp entered into an employment agreement with KORE.  The agreement provided that KORE had the right to terminate Knapp's employment at any time without cause.

53.    If KORE terminated Knapp's employment without cause, KORE would provide Knapp with a severance package equal to four (4) months of his yearly salary.

54.    KORE's reasons for terminating Knapp's employment were pretextual.

55.    KORE terminated Knapp without cause, as such, Knapp is entitled to four (4) months' severance pay of his yearly salary.

56.    Moreover, as part of Knapp's compensation package, he was provided with stock options in KORE.

57.    On March 26, 2021, 10,000 of Knapp's stock options vested.

58. Upon termination, KORE notified Knapp that he must exercise the options within ninety (90) days.

59. KORE's ultimatum to Knapp to purchase the vested options within ninety (90) days is improper considering KORE's wrongful termination of Knapp.

60. KORE's failure to pay Knapp severance pay amounts to a breach of the employment agreement between Knapp and KORE.

61. KORE's breach has caused Knapp damages.

62. Severance pay is considered wages under the Idaho Wage Claim Act, I.C. § 45-601, *et seq*.

63. Knapp has been damaged as a result of KORE's actions and conduct, and therefore is entitled to damages, including damages in the amount of three (3) times the severance that is due and owing pursuant to I.C. § 45-615.

64. Knapp has been required to employ attorneys to commence and prosecute this action and has agreed to pay his attorneys their reasonable fees for services rendered.  Recovery of attorney fees and costs is specifically allowed pursuant to Idaho Code §§ 45-615 and 45-617.  Additionally, Knapp is entitled to prejudgment interest under I.C. § 28-22-104.

### THIRD CAUSE OF ACTION – PAID TIME OFF

65. Knapp incorporates all previous allegation as though fully set forth herein.

66. Knapp entered into an employment agreement with KORE.  The agreement provided for paid time off.

67. During his employment at KORE, Knapp accrued more than 109 hours of paid time off, which constitutes wages under the Idaho Wage Claim Act, I.C. § 45-601, *et seq*.

68. The value of Knapp's accumulated paid time off is $8,158.15.

69. Upon his termination, KORE was required to compensate Knapp for his accumulated paid time off.

70. KORE has failed to pay Knapp for his accumulated paid time off.

71. Knapp has been damaged as a result of KORE's actions and conduct, and therefore is entitled to damages, including damages in the amount of three (3) times the paid time off that is due and owing pursuant to I.C. § 45-615. Furthermore, Knapp is entitled to punitive and exemplary damages in an amount that is appropriate to deter KORE and set an example.

72. Knapp has been required to employ attorneys to commence and prosecute this action and has agreed to pay his attorneys their reasonable fees for services rendered. Recovery of attorney fees and costs is specifically allowed pursuant to Idaho Code §§ 45-615 and 45-617. Additionally, Knapp is entitled to prejudgment interest under I.C. § 28-22-104.

### FOURTH CAUSE OF ACTION – UNJUST ENRICHMENT

73. Knapp incorporates all previous allegations as though full set forth herein.

74. KORE's CEO Lindsay Gorrill and CFO Paul Coombs asked Knapp to create a separate spreadsheet and to set forth Knapp's goals for 2021 including his bonus and commission schedules.

75. The Goals 2021 spreadsheet provided the necessary prerequisites for Knapp to earn his annual bonus and commissions.

76. KORE signed and approved Knapp's Goals 2021 spreadsheet on December 21, 2020.

77. The Goals 2021 spreadsheet provided Knapp a 2% commission for certain state incentives to be payable half as cash and half in shares of KORE.

78. Knapp played a critical role to secure incentives from the State of Arizona for KORE.

79. Knapp's services related to finding and obtaining incentives for KORE were in addition to his regular duties

80. KORE agreed to compensate Knapp over and above his standard compensation as set forth in the Goals 2021 spreadsheet.

81. On June 18, 2021, the Arizona Commerce Authority issued KORE an Incentive Award Letter whereby the State of Arizona offered KORE a refundable tax credit of $63 million through the Qualified Facilities Tax Credit Program as well as a $2 million award through the Arizona Competes Fund, for a total award of $65 million.

82. KORE selected the State of Arizona for its manufacturing facility based upon the incentives offered.

83. KORE never paid Knapp his earned commissions from the Arizona venture.

84. KORE has been unjustly enriched through Knapp's actions.

85. Knapp was responsible for obtaining the Arizona incentives and conferring a benefit upon KORE.

86. KORE accepted the benefit and in fact chose Arizona as the location for its manufacturing facility based on that benefit.

87. KORE does not want to pay Knapp's commission for his work obtaining this incentive.

88. It would be inequitable for KORE to receive this benefit without the agreed-upon payment of 2% of its value to Knapp as the contracted commission rate.

89. Knapp has been damaged as a result of KORE's actions and conduct, and therefore is entitled to damages, the exact amount to be proven at trial, arising out of KORE's unjust enrichment.

### **FIFTH CAUSE OF ACTION – QUANTUM MERUIT**

90. Knapp incorporates all previous allegations as though full set forth herein.

91. KORE's CEO Lindsay Gorrill and CFO Paul Coombs requested Knapp to create a separate spreadsheet and to set forth Knapp's goals for 2021 including his bonus and commission schedules.

92. The Goals 2021 spreadsheet provided the necessary prerequisites for Knapp to earn his annual bonus and commissions.

93. KORE signed and approved Knapp's Goals 2021 spreadsheet on December 21, 2020.

94. The Goals 2021 spreadsheet provided Knapp a 2% commission for certain state incentives to be payable half as cash and half in shares of KORE.

95. Knapp provided valuable services to KORE and played a critical role to secure incentives from the State of Arizona for KORE.

96. Knapp's services related to finding and obtaining incentives for KORE were in addition to his regular salary.

97. KORE agreed to compensate Knapp over and above his standard compensation as set forth in the Goals 2021 spreadsheet.

98. On June 18, 2021, the Arizona Commerce Authority issued KORE an Incentive Award Letter whereby the State of Arizona offered KORE a refundable tax credit of $63 million

through the Qualified Facilities Tax Credit Program as well as a $2 million award through the Arizona Competes Fund, for a total award of $65 million.

99. KORE accepted Knapp's services as evidenced by KORE's selection of the State of Arizona for its manufacturing facility based upon the incentives offered.

100. KORE knew Knapp expected to be paid a commission.

101. Knapp repeatedly requested to be paid the commissions he earned from the Arizona venture.

102. KORE refused to pay Knapp any commissions.

103. KORE's past conduct regarding commissions indicated an implied-in-fact contract between the parties.

104. Knapp has been damaged as a result of KORE's actions and conduct, and therefore is entitled to damages, the exact amount to be proven at trial, for the reasonable value of Knapp's services.

### SIXTH CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

105. Knapp incorporates all previous allegations as though full set forth herein.

106. The agreements between Knapp and KORE included an implied covenant of good faith and fair dealing.

107. The covenant required KORE to perform in good faith the obligations imposed by its agreements with Knapp.

108. KORE acted unreasonably when it terminated Knapp and failed to pay Knapp what was due under the agreements.

109.    Knapp has been damaged as a result of KORE's actions and conduct, and therefore is entitled to damages, the exact amount to be proven at trial, arising out of KORE's breach of the implied covenant of good faith and fair dealing.

### CLAIM FOR ATTORNEY'S FEES

Plaintiff has been required to retain the law firm of Powers Farley, PC to represent him in this case and is entitled to recover all reasonable attorney's fees and costs incurred for said representation pursuant to Federal and Idaho law, including, but not limited to, Idaho Code §§ 12-120 and 121, Idaho Code §§ 45-615 and 45-617, Federal Rule of Civil Procedure 54, and any other contractual provision, statute, rule or regulation providing for the recovery of attorney's fees and costs in this action.  In the event this matter is uncontested and Defendant allows a default judgment to be entered against it, Plaintiff alleges that $7,500 is a reasonable attorney's fee.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues raised in this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.      For judgment in his favor and against Defendant;

2.      That this Court find for Plaintiff on each and every Count of this Complaint and afford Plaintiff the relief sought in each Count of this Complaint;

3.      For all prejudgment interest pursuant to Idaho Code § 28-22-104 and/or any other provisions of contract or law;

4.      That Plaintiff be awarded his costs and reasonable attorney's fees incurred in this action; and

5. For such other and further relief as the Court deems just and equitable under the circumstances.

DATED this 20th day of September, 2021.

                              POWERS FARLEY, PC

                              By  /s/ John M. Howell
                                  John M. Howell – Of the Firm
                                  Attorneys for Plaintiff